## 69572. BUSH v. STATE BOARD OF EDUCATION et al.
### (327 SE2d 826)

CARLEY, Judge.

Appellant Ms. Kathryn Bush is a black employee of the State Department of Education (Department). Since 1978, she has held the position of Education Coordinator for the Program For Exceptional Children (Program). The Program was reorganized in 1982 by adding a second unit director. A white male employee of the Program who held the same position as Ms. Bush was selected on a noncompetitive basis to become the new unit director. After her fellow Program employee was named the new unit director, Ms. Bush filed a grievance with the Department. Her grievance, in relevant part, stated: "The process of [naming the new unit director by] upgrading, . . . permits the simultaneous creation and filling of a merit position *without opportunity for fair and competitive appointment. This procedure* promotes racial and sexual discrimination which is inconsistent with State Merit System and [Department] Affirmative Action policy and objectives." (Emphasis supplied.)

Ms. Bush's departmental grievance was unsuccessful and she pursued her administrative remedies by appealing to the State Personnel Board (Board). The Board's initial decision was rendered by a hearing officer, who concluded that the creation of the position of a new unit director for the Program had been "in accordance with State Personnel Board Rule 4.900" and that the noncompetitive promotion

of Ms. Bush's fellow employee to that position was likewise "in accordance" with the rules of the Board. Having found no procedural violation in the creation and filling of the position of unit director, the hearing officer further found, that in being passed over for selection, Ms. Bush "was not purposefully discriminated against by the Department . . . because of her race or sex in connection with the . . . position [of Program unit director] and in the selection of [her fellow employee] . . . for the position."

Ms. Bush then applied to the Board for a review of the initial decision of its hearing officer. OCGA § 45-20-9 (e). On that review, the Board disagreed with some of the findings reached by its hearing officer. In specific, the Board found that appellant's fellow employee's position was reallocated and that he was promoted without being required to meet any particular standards for that promotion. The Board further found that "Rule 4, Section 4.900 [did] *not* constitute authority" for the procedure followed by the Department with regard to filling the new position of unit director. (Emphasis supplied.) The Board concluded that the noncompetitive promotion of Ms. Bush's fellow employee to "this new position was *not* in accordance with Department . . . policy for filling vacancies and had the *effect* of discriminating against [Ms. Bush] on the basis of race since she was *not permitted to compete* for the promotion." (Emphasis supplied.) It was the Board's final decision that the newly created position of Program unit director "be announced as a vacant position *open to application* by qualified employees *in accordance with Department . . . policies.*" (Emphasis supplied.)

The appellee State Board of Education then petitioned the superior court for judicial review of the Board's final decision. OCGA § 45-20-9 (h). The superior court reversed, on the basis that the Board had "erred as a matter of law in applying the wrong test for discrimination in this case . . . . [I]n order to find for [Ms. Bush], the State Personnel Board must make a finding of intentional or purposeful discrimination; *Georgia Bureau of Investigation v. Heard,* [166 Ga. App. 895 (305 SE2d 670)] (1983) . . . ." Ms. Bush applied to this court for a discretionary appeal from the order of the superior court, and her application was granted.

It is clear that, contrary to the findings of its hearing officer, the *final* decision of the Board was based upon procedural considerations, to wit: the authority pursuant to which the new position of Program unit director had been created and filled. The Board found that a second unit directorship for the Program was in fact a "new position," that the noncompetitive "promotion" of Ms. Bush's fellow employee to that position was "not in accordance with the Department . . . policy for filling vacancies," and that the position should be "open to application by qualified employees in accordance with Department

. . . policies." In short, the Board found that the proper procedure for filling the position was by competitive application, and not by noncompetitive promotion.

It is true that the Board also found that the departmental failure to follow the applicable procedure for filling the position "had the effect of discriminating against [Ms. Bush] *on the basis of race since she was not permitted to compete for the promotion.*" In view of the Board's other findings, this statement concerning racial discrimination appears to be a non sequitur. The predicate for the Board's decision was the Department's *failure to follow* an established, neutral *procedure* which provided for competitive application. Compare *GBI v. Heard,* supra at 896 (discussing racially "disparate impact" which consists of *following* established, neutral procedures which " 'fall more harshly on one group than another and cannot be justified as a business necessity).' " The denial of an opportunity to compete for an available new position would adversely "affect" *all* qualified potential applicants regardless of their race. Since it was this procedural violation that formed the basis of the Board's decision, the true discriminatory effect that the departmental action had on Ms. Bush was in her capacity as a qualified applicant for the position, without regard to her race or her sex. The language regarding racially discriminatory effect employed by the Board in its decision is thus mere surplusage, calculated to indicate that, in addition to the procedural violation, the departmental action had *the appearance* of racially discriminating against Ms. Bush.

Accordingly, the instant case is not one in which racial discrimination is the central and decisive issue, and it was not incumbent upon Ms. Bush to prove any form of racial discrimination whatsoever. The established procedure of competitive application was not followed, and Ms. Bush demonstrated to the satisfaction of the Board that this had a discriminatory effect on her in her capacity as an employee qualified to apply for the position. The superior court erred in ruling that the Board was not authorized to grant Ms. Bush the relief she sought in the absence of proof of intentional purposeful racial discrimination. The only issue properly before the superior court was whether the Board was authorized to find that established departmental procedures were violated in filling the position of unit director. That issue was not addressed by the superior court. Accordingly, the order of the superior court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and case remanded. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 7, 1985.

George L. Howell, for appellant.
Patrick W. McKee, Assistant Attorney General, for appellees.